**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STOLAT FINANCIAL, LLC,**<br>744 E. Superior St.<br>Duluth, MN 55802<br>　　**Plaintiff,**<br><br>v.<br><br>**FEDERAL DEPOSIT INSURANCE<br>CORPORATION AS RECEIVER FOR<br>THE FREEDOM STATE BANK**<br>550 17th Street NW<br>Washington, DC 20429-9990,<br><br>　　**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Civil Action No. 1:16-cv-912** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Stolat Financial, LLC ("Stolat") files its Original Complaint ("Complaint") complaining of and about Defendant Federal Deposit Insurance Corporation as Receiver for The Freedom State Bank ("FDIC" or "Receiver"), as follows:

**I.
PARTIES AND JURISDICTION**

1. Stolat is a Minnesota limited liability company with its principal place of business in Minnesota.

2. The FDIC is an agency of the United States.

3. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 1819(b)(2)(A).

1

## II.
## VENUE

4. Venue is proper in this Court because the FDIC is headquartered in Washington, D.C. Venue is also mandatory in the United States District Court for the District of Columbia pursuant to the Agreement (defined below) between the parties that is at issue in this lawsuit.

## III.
## BACKGROUND FACTS

**A.     Loan Sale Agreement**

5. On November 12, 2014, Stolat, as buyer, and the FDIC, as seller, entered into that certain Loan Sale Agreement (the "Agreement")[1] for the purchase of, among others, two Loans originated by The Freedom State Bank ("FSB"), secured by certain Mortgaged Property located in the state of Oklahoma and identified under the Agreement as Loan Nos. 66330 and 66214 (each, a "Loan", and collectively, the "Loans"). Under the Agreement, the Book Value of Loan No. 66330 is $987,417.64, and the Book Value of Loan No. 66214 is $400,367.42.

6. The Agreement obligates the FDIC to repurchase the Loans at Stolat's option upon satisfaction of certain procedures and requirements. Specifically, Section 7.1(f) of the Agreement provides:

> 7.1     **Repurchases at Buyer's Option.** Buyer may, at its option, and upon satisfaction of the procedures and other requirements set forth below, require Seller to repurchase a Loan, if, and only if, prior to the Loan Sale Closing Date one of the following events set forth below has occurred . . . :
>
> . . .
>
> (f)     The Mortgaged Property securing any Loan sold hereunder has Significant Environmental Contamination. Buyer's recourse with respect to this Section 7.1(f) shall be conditioned upon: (i) the presence of Significant Environmental Contamination not being disclosed in the Loan, Loan File or other material made available by Seller to Buyer prior to submission of a Bid; (ii) such Loan having a Book Value greater than $250,000.00 as of the Loan Sale Closing Date; and, (iii) Buyer delivering, along with the

---

[1] Capitalized terms referenced but not defined herein shall have the meaning ascribed to them in the Agreement.

notice required by Section 7.4 hereof, the following, each of which must be satisfactory in form and substance to Seller in its sole discretion:

1. A Phase I environmental assessment, from a qualified and reputable firm, of the Mortgaged Property securing the Loan; and,

2. A Phase II environmental assessment or lead-based paint survey of such Mortgaged Property from a qualified and reputable firm, which assessment shall confirm (i) the existence of Significant Environmental Contamination on such Mortgaged Property and (ii) that the regulator is likely to require such remediation; and,

3. Buyer shall have submitted a written certification of Buyer under penalty of perjury that no action has been taken by or on behalf of Buyer (i) to initiate foreclosure proceedings or (ii) to accept a deed-in-lieu-of-foreclosure in connection with such loan.

As defined in the Agreement, "Significant Environmental Contamination" means:

"the presence at, in or under a Mortgaged Property, at a level or in an amount that poses a threat to human health or the environment sufficient to prompt a regulator to require remediation under any federal or state law, of any substance defined as a "hazardous substance" under Section 101(14) of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601(14), including lead-based paint and petroleum, including crude oil or any fraction thereof that is liquid at standard conditions of temperature and pressure."

**B.    Timely and Compliant Repurchase Notices**

7. On May 7, 2015, Stolat timely exercised its repurchase option by sending the FDIC a separate notice for each Loan (each, a "Notice", and collectively, the "Notices") for the repurchase of each Loan pursuant to and in compliance with the procedures and requirements of Article VII of the Agreement.

8. Specifically, each of the Notices included Phase I and Phase II environmental assessments of the Oklahoma Mortgaged Property securing each of the Loans (collectively, the "Mortgaged Properties") from a qualified and reputable firm (the "Assessments") and Stolat's written certification under penalty of perjury, all as required by Section 7.1(f) of the Agreement.

3

9. The Notices and the Assessments confirmed the existence of hazardous substances under Section 101(14) of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601(14)("CERCLA") and petroleum products (these CERCLA § 101(14) hazardous substances and petroleum products are referred to herein collectively as "Hazardous Substances") at, in or under the Mortgaged Properties.

10. Per the Assessments for Loan No. 66330, there were 27 Hazardous Substances found on the Mortgaged Property securing this loan.

11. Per the Assessments for Loan No. 66214, there were 23 Hazardous Substances found on the Mortgaged Property securing this loan.

12. The presence of the Significant Environmental Contamination on the Mortgaged Properties was not disclosed in the Loan, the Loan File or other material made available by the FDIC to Stolat prior to submission of the Bid that included the Loans.

13. The Notices and Assessments confirmed that the Oklahoma regulators with jurisdiction over the Hazardous Substances - namely, (1) the Oklahoma Department of Environmental Quality ("ODEQ") pursuant to its hazardous waste regulations (Oklahoma Administrative Code ("OAC") 252:205-1-1, *et. seq.* and (2) the Oklahoma Department of Agriculture, Food and Forestry ("ODAFF") pursuant to its OAC regulations - would likely require remediation of many of the Hazardous Substances.

14. In fact, the Notices and the Assessments confirmed that for many of the Hazardous Substances, remediation was not just likely, but was mandatory or required.

15. Many of the Hazardous Substances found on the Mortgaged Properties were substantially in excess of the minimum quantities or levels under ODEQ's or ADAFF's regulations that require remediation.

16. Of course, for any substance identified under Section 101(14) of CERCLA, ODEQ's regulations, or ODAFF's regulations as a "hazardous substance", such substance necessarily presents an imminent and substantial danger to the public health or welfare, or the environment.

17. On August 11, 2015, ninety-six (96) days after Stolat sent the Notices, the FDIC responded to the Notices and denied Stolat's repurchase request (the "Denial") for the stated reason that the Notices do not "establish that the **hazardous substances found** on the Mortgaged Property were present at levels or in an amount that poses a threat to human health or the environment sufficient to prompt a regulator to require remediation under any federal or state law."

18. In its Denial, the FDIC did not dispute the level of the Hazardous Substances found on the Mortgaged Properties per the Assessments.

19. The FDIC admits in its Denial that there are hazardous substances found on the Mortgaged Properties. Hazardous substances, by definition, pose a threat to human health or the environment.

20. In the months that followed the FDIC's Denial, Stolat and the FDIC engaged in a series of additional communications, in which the FDIC stood by its refusal to repurchase the Loans. Such communications ultimately concluded with the FDIC's refusal on May 10, 2016 to provide Stolat with the assessments of "their outside independent environmental consultants" that the FDIC relied upon in its April 8, 2016 communication.

21. The Repurchase Price for Loan No. 66330 is $595,314.07.

22. The Repurchase Price for Loan No. 66214 is $237,804.13.

23. By refusing to repurchase the Loans, the FDIC has failed, and continues to fail, to comply with its repurchase obligations under the Agreement.

24. Under the circumstances, the FDIC has acted in bad faith in its refusal to repurchase the Loans.

## IV.
## CAUSES OF ACTION AND REMEDIES

**A.**   **Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing**

25. To the extent not inconsistent herewith, Stolat incorporates as if fully set forth herein all of the foregoing paragraphs.

26. The FDIC has breached the Agreement by its failure to repurchase the Loans.

27. The FDIC has also breached its implied covenant of good faith under the Agreement by its refusal to repurchase the Loans.

28. As a result of such breaches, Stolat has been damaged in the amount of $833,118.20, which is the combined repurchase price of the Loans.

29. In the alternative to a recovery of its actual damages, Stolat requests specific performance of the FDIC's repurchase obligation under the Agreement with respect to the Loans.

**B.**   **Conditions Precedent**

30. All conditions precedent to Stolat's claims asserted herein have occurred, have been performed or have been satisfied.

## V.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Stolat respectfully requests that the FDIC be cited to appear and answer herein, and that upon final trial or hearing, the Court enter a judgment against Receiver:

a. Awarding Stolat its actual damages in the total amount of $833,118.20 or specific performance requiring the FDIC to repurchase the Loans in accordance with the Agreement; and

b. Awarding Stolat prejudgment and postjudgment interest as allowed by law, attorneys' fees as allowed by law, all costs of suit, and all other and further relief, at law or in equity, to which Stolat may be entitled.

Dated: May 12, 2016                    Respectfully submitted,

*/s/ Michelle C. Pardo*
Michelle C. Pardo
D.C. Bar No.  456004
michelle.pardo@nortonrosefulbright.com
Rebecca E. Bazan
D.C. Bar No.  994246
rebecca.bazan@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW
Suite 1000
Washington, DC  20001-4501
Telephone:     (202) 662-0200
Facsimile:      (202) 662-4643

Theodore W. Daniel (*application pro hac vice to be submitted*)
Texas Bar No. 05362400
ted.daniel@nortonrosefulbright.com
Tricia W. Macaluso (*application pro hac vice to be submitted*)
Texas Bar No. 24013773
tricia.macaluso@nortonrosefulbright.com
2200 Ross Avenue, Suite 3600
Dallas, Texas  75201-7932
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200

ATTORNEYS FOR PLAINTIFF STOLAT FINANCIAL, LLC